**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

KEVIN & SHAWN ROLLE,

    Plaintiffs,

vs.

LAW OFFICE OF SAMUEL STREETER, PLLC, et al.,

    Defendants.

No. CIV 08-274-TUC-CKJ

**ORDER**

    Pending before the Court is Plaintiffs' Motion for Default Judgment against Defendant Law Office of Sam Streeter, PLLC [Doc. # 78]. The Clerk of the Court has entered default.

*Factual and Procedural Background*

    Plaintiffs Kevin Rolle and Shawn Rolle (collectively, "the Rolles") filed a Complaint in the Superior Court of Arizona, in and for the County of Pima, on January 9, 2008. The action was removed to the United States District Court, District of Arizona, on April 29, 2008.[1]

    In their Complaint, the Rolles allege that a debt owed to Chase Manhattan Bank had been sold to Collect America, L.L.C., on December 13, 2005. The Complaint further alleges that, on January 5, 2006, Mrs. Rolle was advised that the debt had been turned over to the Law Office of Samuel Streeter ("Streeter") for collection. The Complaint alleges that

---

[1] Defendant Law Office of Sam Streeter, PLLC, consented to the removal. *See* Doc. # 3.

Streeter is, upon information and belief, a Texas Private Limited Liability Company, and does business in the State of Arizona and Pima County as a collection agent. Streeter informed Mrs. Rolle that the debt could be settled for $13,310.00 if the Rolles could make a down payment of five or six thousand dollars and pay the rest of in monthly installments; Streeter alleged that the matter would go to suit if Mrs. Rolle did not accept the settlement.[2]

The Complaint further alleges that Mrs. Rolle contacted her ex-husband regarding a personal loan and that Mrs. Rolle's ex-husband agreed to an advancement of one year's child support, or $8,800.00, in exchange for Mrs. Rolle forgoing all future child support payments. After Mrs. Rolle informed Streeter of the arrangement, Streeter informed Mrs. Rolle that, unless a down payment was received that day, that suit would be filed the following week. When Mrs. Rolle informed Streeter that the money would be available by noon on the following Saturday, Streeter requested a post-dated check. When Mrs. Rolle refused, Streeter informed her that the lawyer in charge of the file would file suit and then call Sgt. Rolle's base commander and in turn the base commander would not allow Sgt. Rolle to re-enlist; Streeter informed Mrs. Rolle that such an action would ruin Sgt. Rolle's career and that he would be ineligible for re-enlistment in the Air Force.[3] Mrs. Rolle agreed to give Streeter a postdated check.

The Complaint further alleges that Mrs. Rolle became aware of the Fair Credit Reporting Act ("FCRA") and contacted Streeter regarding the FCRA and her suspicion that Streeter stood in violation of several of its terms. After Mrs. Rolle mentioned the possibility of retaining a lawyer and contacting the Arizona Attorney General's Office, Streeter threatened to take the settlement offer off of the table unless Mrs. Rolle agreed not to contact a private attorney or the Arizona Attorney General's Office.

---

[2]The Complaint alleges that the debt was the sole and separate debt of Sgt. Rolle and that Mrs. Rolle had no responsibility for the debt.

[3]Sgt. Rolle was deployed during the time of these discussions between Mrs. Rolle and Streeter.

The Complaint alleges that, in late January of 2006, the Rolles contacted a private attorney who informed them that Streeter's (and Chase's) actions were likely in violation of several applicable state and federal statutes and advised the Rolles to forgo further payment to either.

The Complaint also alleges that, in late 2006, Sgt. Rolle was again scheduled to be deployed overseas pursuant to his employment with the Air Force. Sgt. Rolle, based on the ongoing discussions between the parties and his own monitoring of his credit reports, assumed that his credit file was in order and that he was eligible for deployment. However, the Air Force notified Sgt. Rolle that it was suspending his security clearance because of the unresolved debt with Chase.

The Complaint alleges that Sgt. Rolle was unable to perform the duties required of his position before his deployment and that he suffered immense embarrassment and humiliation as a result of the suspension. Additionally, although his clearance was granted, Sgt. Rolle now faces random reevaluation of his qualification for his clearance and the potential for being prematurely discharged from the Air Force. Further, Sgt. Rolle's clearance has been permanently annotated with this issue.

The Complaint alleges, *inter alia*:

- Streeter (and other defendants) violated the terms of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair and Accurate Credit Transaction Act ("FACTA").

- Streeter violated the duty set forth in A.R.S. § 32-1051(3) which states that collection agencies licensed in the State of Arizona have a duty to act fairly and honestly with debtors.

- The conduct of Streeter (and Chase) was tortious, illegal, intentional, designed to cause the Rolles severe emotional distress, outrageous and not to be tolerated in a civil society and that, as a direct and proximate result of the conduct, the Rolles have suffered damage.

- The conduct of Streeter violates A.R.S. § 13-1804(6) which states that seeking

to obtain property through threatening to expose a secret, whether true or false, that would damage a person's credit, qualifies as the crime of extortion, and that the Rolles suffered damage as the result of Streeter's conduct.

- Streeter (and other defendants) had a duty to supervise their employees to ensure that, in the course and scope of their employment, those employees did not commit torts and illegal acts against the Rolles and similarly situated persons.

On May 15, 2008, the Rolles filed an Application for Entry of Default Against Streeter and a Motion for Default Judgment Against Streeter. On May 16, 2008, the Clerk entered default.

On May 22, 2008, the Rolles filed an Amended Complaint.

On June 20, 2008, this Court denied with leave to resubmit the Rolles' Motion for Default Judgment. The Court determined that Streeter had no standing in this matter and was prohibited from introducing evidence, being heard at the final hearing, or otherwise appearing in any way.

On December 16, 2008, the Rolles filed a Second Amended Complaint ("SAC").[4] The SAC includes the allegations as summarized by the Court. The SAC further alleges that Chase had sold the Rolles' debt to either Collect America or CACH, L.L.C. The SAC also alleges that, upon information and belief, the Streeter is a sub-entity, franchisee or otherwise related to CACH, L.L.C. The SAC does not include any additional claims against Streeter.

Other defendants in this case were dismissed on June 18, 2008, and October 8, 2009. On October 8, 2009, this Court directed the Rolles to file a Motion for Default Judgment, a Motion to Dismiss, or a status report as to Streeter on or before November 2, 2009. The Court extended the deadline and, on January 28, 2010, the Rolles filed a Motion for Default Judgment as to Streeter.

---

[4]According to the Certificate of Service attached to the SAC, the SAC was electronically served upon Streeter. The Court's electronic filing system confirms that a copy of the SAC was transmitted to the email address of counsel for Streeter.

*Adequacy of Service of Process*

As a preliminary matter, the Court addresses the adequacy of the service of process on Streeter. *See e.g., Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1345 (5th Cir. 1992) (Where default "is based on a void judgment under rule 60(b)(4), the district court has no discretion-the judgment is either void or it is not. If a court lacks jurisdiction ... because of insufficient service of process, the judgment is void and the district court must set it aside.); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851-52 (9th Cir. 1992) (finding that where a plaintiff "failed to serve [defendant] properly ... the default judgments [wa]s void").

Based on the Application for Entry of Default [Doc. # 13], including the attachment, it appears that the Complaint was properly served on Streeter. The complaint was served on Sam Wooley at 3030 S. Gessner, Suite 200, Houston, TX 77063, on April 7, 2008. The verified Return of Service indicates that Mr. Wooley is the managing agent and is authorized to receive service of process on behalf of Streeter. *See* Fed.R.Civ.P. 4(h) (discussing service of process on a corporation). Moreover, according to the Certificate of Service attached to the SAC, the SAC was electronically served upon Streeter. However, electronic service is sufficient only if a person has consented in writing. *See* Fed.R.Civ.P. 5(b)(2)(E) and 5(b)(3). In the District of Arizona, "registration as an ECF user constitutes consent to the electronic service of all documents through the Court's transmission facilities for purposes of Rule 5(b)(3) of the Federal Rules of Civil Procedure." L.R.Civ. 5.5(h). Neither Streeter nor an attorney on Streeter's behalf have registered as an ECF user. Further, the Rolles have not provided any documentation that Streeter has consented in writing to electronic service. The Court finds, therefore, that the SAC was not served by **valid** electronic means on Streeter.

Nonetheless, the federal rules also provide:

> No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under [Fed.R.Civ.P.] 4.

Fed.R.Civ.P. 5(a)(2). In this case, Streeter had not made an appearance, had not filed an answer, and default had been entered against Streeter at the time of the filing of the SAC. Moreover, the SAC does not include new claims for relief against Streeter. *See* 27A Fed.

- 5 -

1 Proc., L.Ed. § 62:263, *citing Blair v. City of Worcester*, 522 F.3d 105 (1st Cir. 2008) ("An amended complaint that is substantively identical to the original complaint and does not contain a new claim for relief does not require additional service of process."). The Court finds, therefore, that service of process of the SAC upon Streeter was not required.

Generally, an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); *see also Vanguard Financial Service Corp. v. Johnson*, 736 F.Supp. 832, 835 (N.D.Ill. 1990) (denying as moot plaintiff's motion for default judgment where amended complaint subsequently filed). "An original complaint is only superseded, however, when the amended complaint is properly served, not when it is filed." *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1180 (C.D.Cal. 1998).[5] Streeter having not been served with the SAC pursuant to Fed.R.Civ.P. 5, the SAC does not supersede the original complaint as to Streeter.[6] Consideration of default judgment, therefore, must be based on the original Complaint.

*Default Judgment and Eitel Factors*

Because service of the original Complaint appears to have been proper, the Court now addresses the merits of the Rolle's renewed motion for default judgment. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed.R.Civ.P. 55. The "district court's decision whether to enter a default judgment is a discretionary one."

---

[5]The *Doe* court cited *International Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2nd Cir. 1977) (concluding that judgments based on original complaint were valid despite filing of amended complaint because amended complaint was never properly served), in support of this assertion. The *Doe* court pointed out that the *Vesco* court somewhat limited the holding "with the caveat that service is the trigger for supersedure of a prior pleading, 'at least where . . . the amended compliant is required to be served under Rule 5(a).'" *Doe*, 27 F.Supp.2d at 1180, n. 2, *quoting Vesco*, 556 F.2d at 669.

[6]*See e.g., Finkel v. Hall-Mark Elec. Supplies Corp.*, No. 07-CV-2376 (NGG)(JO), 2009 WL 3401747 (E.D.N.Y. 2009).

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As default has already been entered in this case, the Court must take as true all factual allegations in the Rolle's Complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks omitted); *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).

*Possibility of Prejudice to the Rolles*

The Court first considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*. Based on the documents submitted by the Rolles, it appears that Streeter does not contest that (1) Streeter violated the terms of the FCRA, the FDCPA, and the FACTA, (2) Streeter violated the duty set forth in A.R.S. § 32-1051(3), (3) the conduct of Streeter was tortious, illegal, intentional, designed to cause the Rolles severe emotional distress, outrageous and not to be tolerated in a civil society and that, as a direct and proximate result of the conduct, the Rolles have suffered damage, (4) the conduct of Streeter violates A.R.S. § 13-1804(6) and that the Rolles suffered damage as the result of Streeter's conduct, and (5) Streeter had a duty to supervise its employees to ensure that, in the course and scope of their employment, those employees did not commit torts and illegal acts against the Rolles and similarly situated persons. The Court concludes that the Rolles would suffer prejudice if its motion for default judgment were denied because it would be "without other recourse for recovery." *Pepsico, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002).

*Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The Court also considers that *Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D.Cal.2003) (internal quotation marks omitted).

As to the Rolles' claim that Streeter violated the terms of the FCRA and the FACTA, the FACTA amended the FCRA and imposes regulations that either demand or forbid the disclosure of consumers' credit information in specific circumstances. *See* 15 U.S.C. § 1681c; 15 U.S.C. § 1681n; *Follman v. Village Squire, Inc.*, 542 F.Supp.2d 816, 819 (N.D.Ill. 2007) (finding that the "unambiguous language" of the FCRA provides a private right of action for "consumers" to enforce the requirements of FACTA). It is not clear what cause of action the Rolles are seeking to establish as to Streeter. *See e.g., Nelson v. Chase Manhattan*, 282 F.3d 1057 (9th Cir. 2002) (cause of action against creditor if credit history is inaccurately reported); 15 U.S.C. § 1681s-2(b) (cause of action for failure to correct information after being provided proof); *Pintos v. Pacific Creditors Ass'n*, 565 F.3d 1106 (9th Cir. 2009), and 15 U.S.C. § 1681b(a)(3)(A) (cause of action against credit bureau if credit file pulled without permissible purpose); 15 U.S.C. § 1681i(a)5)(B)(ii) (cause of action against credit bureaus if item removed from credit report is reinserted without notification); 15 U.S.C. § 1681i (include notation that item is disputed).

In light of the allegations against Streeter contained within the original Complaint and no further clarification from the Rolles in their Motion for Default Judgment, the Court finds the Rolles have not stated an FCRA claim or a FACTA claim on which they may recover.

As to the Rolles' claim that Streeter violated the FDCPA, four elements are required:

> (1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. § 1692a(3) or § 1692c(d) for purposes of a cause of action under 15 U.S.C.A. § 1692c (communication in connection with debt collection) or 15 U.S.C.A. § 1692e(11) (concerning failure to provide the consumer debtor with a "mini-Miranda" warning);
>
> (2) the "debt" arises out of a transaction entered primarily for person, family or household purposes; 15 U.S.C.A. § 1692a(5);
>
> (3) the defendant collecting the debt is a "debt collector" within the meaning of the FDCPA,15 U.S.C.A. § 1692a(6); and

> (4) the defendant has violated, by act or omission, a provision of the FDCPA. 15 U.S.C.A. § 1692a-1692o; 15 U.S.C.A. [§] 1692a; 15 U.S.C.A. § 1692k.

29 Causes of Action 2d 1, *citing Creighton v. Emporia Credit Service, Inc.*, 981 F.Supp. 411 (E.D.Va. 1997). The Court finds the Rolles have stated a FDCPA claim on which they may recover. *See e.g.* 15 U.S.C. § 1692d (harassment or abuse); 15 U.S.C. § 1692 (false or misleading representations).

As to the Rolle's claim that Streeter violated the duty set forth in A.R.S. § 32-1051(3) which states that collection agencies licensed in the State of Arizona have a duty to act fairly and honestly with debtors, the Rolles have simply alleged that Streeter was doing business in the State of Arizona and Pima County as a collection agency. The Rolles have not alleged that Streeter was licensed as a collection agency in the State of Arizona. While an unlicensed collection agency may be guilty of a class 1 misdemeanor, *see* A.R.S. § 32-1056, the Rolles have not pointed to any authority for a private cause of action against an unlicensed collection agency acting in Arizona or for an unlicensed collection agency violating the duty to act fairly and honestly with debtors. *See generally*, W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 36 at 226 (5th ed. 1984) (licensing statutes create no liability if the actor is competent but unlicensed). The Court finds the Rolles have not stated an A.R.S. § 32-1051(3) claim against Streeter on which they may recover.

As to the Rolles' claim that the conduct of Streeter constituted intentional infliction of emotional distress, such a claim requires a showing that (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such conduct would result from his conduct, and (3) severe emotional distress did occur as a result of defendant's conduct. *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 517, 115 P.3d 107, 111 (2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002) (discussing difference between negligent and intentional torts). The acts must be "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

community.'" *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 183 Ariz. 550, 554, 905 P.3d 559, 563 (App. 1995), *quotation omitted.* Further, a defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct. *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580 (1987). Given the allegations contained within the Complaint and the Court's acceptance of these allegations as true, the Court finds that the Rolles have shown intentional infliction of emotional distress.

As to the Rolles' claim of extortion, a "criminal statute may establish a tort duty if the statute is 'designed to protect the class of person, in which the plaintiff is included, against the risk of type of harm which has in fact occurred as a result of its violation . . ." Keeton § 36, at 229-30. However, the Court of Appeals of Arizona determined that A.R.S. § 13-1804(6) was unconstitutionally overbroad. *State v. Weinstein*, 182 Ariz. 564, 898 P.2d 513 (App. 1995). Although the Arizona Legislature amended this statute in 1999, the amendment does not address the unconstitutionally broad nature of A.R.S. § 13-1804(AP(6). The Court finds, therefore, the Rolles have not stated an A.R.S. § 13-1804(A)(6) claim against Streeter on which they may recover.

*Sum of Money at Stake in Action*

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F.Supp.2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. In this case, the Rolles seek damages in an amount sufficient to compensate them for the damage done to their credit and professional reputations, damages in an amount sufficient to compensate them for the emotional trauma they have suffered as a result of Streeter's actions, damages in an amount sufficient to compensate them for the civil penalties demanded by the federal statutes Streeter has violated, punitive damages in an amount sufficient to deter Streeter from similar future conduct, and reimbursement for their costs and attorneys' fees.

While the Rolles have not set forth a specific sum, the Court finds the nature of the

requested damages is appropriate.

*Possibility of Dispute Concerning Material Facts*

The Court also considers the possibility of dispute as to any material facts in the case. Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in the Rolles' complaint as true (except for those relating to damages) and (2) Streeter has not made any attempt to challenge the Rolles' Complaint or even appear in this case.

*Whether Default Was Due to Excusable Neglect*

Usually, a court will ask whether the failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472 (noting that the fact that the parties were engaged in settlement negotiations excused defendant from failing to answer). In the instant case, Streeter was properly served with the Summons and Complaint on April 7, 2008. Moreover, the Court's electronic filing system indicates that an e-mail address associated with Streeter has been receiving electronic copies of documents filed in this case.[7] In other words, it appears that Streeter has also received copies of the Amended Complaint, the Second Amended Complaint, the Application for Entry of Default, the original Motion for Default Judgment, and the current Motion for Default Judgment. Given these circumstances, it is unlikely that Streeter's failure to answer and the resulting default was a result of excusable neglect. *Cf. Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal. 2001) (concluding no excusable neglect because defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant

---

[7] The Court notes that, in considering the adequacy of service in preparation of this Court, the Court ascertained that Streeter has not registered as an ECF user in this district. The Clerk of the Court has informed the Court's staff that, because the Streeter-related email address was erroneously added as a recipient of ECF filings, the Clerk of the Court will remove the email address from the list of ECF recipients in this case.

- 11 -

motion").

*Policy Underlying Federal Rules of Civil Procedure*

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, because a discretionary standard is applied, "default judgments are more often granted than denied." *Pepsico v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal. 1999). Indeed, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002). Moreover, Streeter's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Streeter has failed to respond to the lawsuit and the Rolles have specifically pleaded facts supporting the claims as discussed by the Court, *see* pp. 8-10; therefore, the policy encouraging decisions of cases on their merits does not weigh against granting default judgment here.

*Summary*

Based on all the *Eitel* factors discussed above, the Court finds that the Rolles' Motion for Default Judgment should be granted.

*Damages*

Having determined that the Motion for Default Judgment should be granted, the Court now turns to the matter of damages. The Rolles are entitled to damages for the FDCPA and intentional infliction of emotional distress claims. However, the Rolles have not made a claim or established a sum certain or "a sum that can be made certain by computation." Fed.R.Civ.P. 55(b)(1); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D.Cal. 2003) ("Plaintiff is required to prove all damages sought in the complaint."). Further, "any relief granted may not be any different from, or greater than, that which the plaintiff has demanded in his or her complaint[.] CJS Judgments § 288. This "is

to provide a defending party with adequate notice upon which to make an informed judgment on whether to default or actively defend the action." AmJur Judgments § 297. Indeed, the policy of Fed.R.Civ.P. 55 requires that "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Electronics, Inc. v. Advance Creative Computer*, 212 F.Supp.2d 1171, 1178 (N.D.Cal. 2002).

Because there is insufficient information before the Court to determine damages, the Court will grant, in part, the Motion for Default Judgment at this time.[8] The Court will direct the Rolles to submit a Supplemental Motion for Default Judgment with further briefing and/or evidence to support the Rolles' request for damages in an amount sufficient to compensate them for the damage done to their credit and professional reputations, damages in an amount sufficient to compensate them for the emotional trauma they have suffered as a result of Streeter's actions, damages in an amount sufficient to compensate them for the civil penalties demanded by the federal statutes Streeter has violated, punitive damages in an amount sufficient to deter Streeter from similar future conduct, and reimbursement for their costs and attorneys' fees.

Failure of the Rolles to submit a Supplemental Motion for Default Judgment will result in the Court directing the Clerk of the Court to enter judgment without an award of damages.

Accordingly, IT IS ORDERED:

1. The Rolles' Motion for Default Judgment [Doc. # 78] is GRANTED IN PART.
2. The Rolles shall file any supplemental Motion for Default Judgment within 30

---

[8]The Court notes that the Rolles, in failing to provide proof of damages, may have been anticipating that the Court would schedule a hearing regarding damages. However, Fed.R.Civ.P. 55(b) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2nd Cir.1991). If the Court finds such a hearing is necessary, the Court will schedule a hearing following the review of any Supplemental Motion for Default Judgment.

days of this Order. Any supplemental Motion for Default Judgment shall include the information discussed on pages 12-13 of this Order.

    3.    The Clerk of the Court shall mail a copy of this Order to:

>Law Office of Sam Streeter, PLLC
>3030 South Gessner, Suite 200
>Houston, TX 77063

DATED this 1st day of March, 2010.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge